408 P.2d 411

Joseph B. CARR, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, and Phoenix Newspapers, Inc., Respondents.

No. 1 CA–IC 53.

Court of Appeals of Arizona.

Dec. 13, 1965.

**308**

James D. Lester, Phoenix, for petitioner.

Robert K. Park and Joyce Volts, Phoenix, for respondents.

CAMERON, Judge.

This is a writ of certiorari to review the lawfulness of an award of the Industrial Commission of Arizona, finding that the petitioner suffered a 5% general physical functional disability, a 6.67% loss of earning capacity, and granting petitioner $22.72 monthly.

We are called upon to determine the effect of this award upon a previous finding of the Industrial Commission that the petitioner had suffered a 20% general physical functional disability, and also to determine the wage base upon which the Commission awarded petitioner $22.72 per month for loss of earning capacity.

The facts necessary for a determination of this matter are as follows: Prior to 5 October, 1955, petitioner was employed by the respondent Phoenix Newspapers, Inc. At that time, he was working three nights a week as an assistant foreman which provided a higher pay than a journeyman stereotyper. Applicant suffered an industrial injury to his back on 5 October, 1955, (Industrial Commission case number AN 26507) and again on 21 August, 1957, (Industrial Commission case number AP 24214). Three surgeries were performed upon his back as a result of these two injuries. On 25 May, 1960, the Commission entered an award and finding that the applicant had suffered a 14.13% loss of earning capacity entitling him to $42.99 a month. The petitioner did not contest this award.

The petitioner returned to work with the Phoenix Newspapers as a journeyman stereotyper, and although he was not employed as an assistant foreman, he was, with the aid of overtime and presumable increases in salary, receiving the amount of $619.20 per month when he was injured on 25 January, 1963. This injury was to the same back area and occurred when petitioner lifted a heavy lead slab. After treatment, the petitioner returned to work on 18 November, 1963. During that period of time, the employees of the respondent, Phoenix Newspapers, Inc., had received an hourly increase in salary. Petitioner, because of his physical condition, was unable to perform the overtime work which he had been performing prior to his injury of 25 January, 1963. The Commission found that his average monthly wage after returning to work was $577.90 per month. This amount was based upon the petitioner's new pay scale which had gone into effect during his absence, and also reflected the lesser amount of overtime that petitioner received allegedly due to his injury. The testimony is ample to indicate that Phoenix Newspapers, Inc., was favoring the petitioner at times in not requiring him to do the more arduous work connected with his employment which he would have normally performed.

The Commission found that petitioner had suffered a 5% general physical functional disability which, when added to his previous 20% general physical functional disability, resulted in a 25% general physical functional disability. The Commission further found that inasmuch as the petitioner was receiving $619.20 monthly income at the time of his injury on 25 January, 1963, that:

"Loss of earning capacity, related to his injuries of August 21, 1957, and October 5, 1955, had ceased, and all benefits payable under this Commission's findings and award of May 25, 1960, be the same or hereby terminated."

The Commission further found that based upon the monthly wage of the petitioner at the time of injury and based upon the monthly wage at the time petitioner returned to work, that petitioner had suffered a 6.67% loss of earning capacity entitling him to a sum of $22.72 per month. Proper motions were made, a hearing granted by the Commission, and from the final order of the Industrial Commission

affirming the previous award, the petitioner brings this writ of certiorari.

We will first consider the action of the Commission in terminating the award of 25 May, 1960, entered as a result of the 1955 and 1957 injuries. As the briefs of respondent would indicate, evidently the Commission found that since the average monthly wage of the petitioner at the time of the injury of 25 January, 1963, was greater than the monthly wage found in the award of 25 May, 1960, any loss of earning capacity resulting from the 1955 and 1957 injuries had ceased to exist. The Commission retains jurisdiction of all compensation cases for the purpose of altering, amending, or rescinding its findings at the insistence of the parties upon proper showing. Adkins v. Industrial Commission, 95 Ariz. 239, 389 P.2d 118 (1964). Our Supreme Court has stated:

"That the commission retains jurisdiction of all compensation cases for the purpose of altering, amending, or rescinding its findings and awards at the instance of either the workman, the insurer or the employer (a) upon *showing* a change in the physical condition of the workman subsequent to said findings and award arising out of said injury resulting in the reduction or increase of his earning capacity; (b) upon a *showing* of a reduction in the earning capacity of the workman arising out of said injury where there is no change in his physical condition, subsequent to said findings and awards; (c) upon a *showing* that his earning capacity has increased subsequent to said findings and award." Steward v. Industrial Commission, 69 Ariz. 159, 180, 211 P.2d 217, 231 (1949). (Italics ours.)

The "showing" required is a "showing" by the party seeking to amend the previous award. That "showing" may not be made ex parte and some notice to all parties concerned must be given before the Commis-

sion may alter or amend the previous award. In the absence of such a showing, a final award is res judicata as to all parties to said award. Moore v. Industrial Commission, 2 Ariz.App. 143, 406 P.2d 861 (1965). In the instant case (AY 2681), we feel and therefore hold that the findings and award entered on 25 June, 1964, purporting to terminate the benefits to the petitioner in his two previous Industrial Commission cases (AM 26507 and AP 24201), is not sufficient notice to the petitioner upon which the Commission may base an alteration or amendment to its award of 1960. Something more must be done in the way of notice, and the petitioner himself must be given an opportunity to be heard concerning the decrease and termination of his previous monthly payment made under the 1960 award. While we would agree that the various cases may be consolidated, still there must be something more than an ex parte termination of petitioner's rights under the 1960 award, and some notice to the petitioner that a hearing will be held concerning these rights.

Even assuming, arguendo, that the award of 25 June, 1964, is a proper notice to the petitioner that upon hearing the Commission would use the hearing as a base upon which to set aside or terminate petitioner's benefits under the award of 25 May, 1960, still the evidence adduced at the said hearing on 19 October, 1964, was insufficient to sustain the action of the Commission. The only witnesses called were those presented by the petitioner. This Court does not know, for example, what effect the loss of petitioner's position as assistant foreman had on his earning capacity, or even if the loss of this position was a result of the prior industrial accidents. There is no testimony concerning wage increases or decreases between 1955 and 1964. In addition to failing to give proper notice of a decrease or termination of petitioner's previous award, the Commission did not present a sufficient showing upon which to base a reduction or termination of the previous award.

**310**

■ We next consider the basis upon which the Commission reached a determination of petitioner's loss of earning capacity as a result of the injury which occurred in January of 1963. Petitioner was found to be receiving an amount of $619.20 per month at the time of the injury. This was based upon an hourly wage of $3.4333 per hour, or $25.75 per shift. At the time he returned to work, the hourly rate had increased to $3.5066 per hour, or $26.30 per shift. Because of his injury, he was unable to put in the overtime that he had been receiving prior to his injury of 25 January, 1963. When he returned to work he lost the amount of overtime that he had normally put in on the job which the testimony clearly indicates was an expected or normal part of his employment. The new wage rate going into effect between the injury and the time that he returned to work, it is obvious that the petitioner's loss of earning capacity was greater than that determined by the Industrial Commission. The Industrial Commission used two wage scales upon which to determine petitioner's loss of earnings. They used his pre-injury wage scale as one base, and his post-injury earnings, with a different wage rate, as the other base. As has been stated:

"The sole evidence to support the Commission's finding was petitioner's actual post-injury earnings. These earnings were not evaluated in the light of whether there was a change of business conditions or an adjustment in wages for economic reasons in the almost two-year period between the date of the injury and the date petitioner's condition became stationary. Nor did the Commission adequately consider the policy of the employer to retain at their previous wages all employees disabled as the result of on-the-job injuries." Allen v. Industrial Commission, 87 Ariz. 56, 67, 347 P.2d 710, 718, (1959).

The Commission may not arbitrarily disregard the increase in petitioner's basic wage in determining his loss of earning capacity as a result of petitioner's 5% additional general physical functional disability. Shroyer v. Industrial Commission, 98 Ariz. 388, 405 P.2d 875 (1965).

The award is set aside.

STEVENS, C. J., and DONOFRIO, J., concur.