425 P.2d 447

**J. L. MANESS, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona and Bever Construction Company, Respondents.**

**No. 1 CA–IC 70.**

Court of Appeals of Arizona.

March 24, 1967.

Rehearing Denied April 19, 1967.

Review Granted May 16, 1967.

Gibbons, Kinney, Tipton & Warner, by Jack C. Warner, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Dee-Dee Samet, Phoenix, for respondents.

CAMERON, Chief Judge.

This is a writ of certiorari to review the lawfulness of an award and finding of the respondent Industrial Commission of Arizona. Petitioner J. L. Maness was injured in an industrial accident 17 December 1963. He was employed as a carpenter on a roof when he stepped on a loose joist and fell backward over the roof onto a concrete curb. He suffered severe injuries including a compound depressed skull fracture, concussion, severely fractured left wrist (which eventually necessitated surgery to remove one inch of the small forearm bone), fractured ribs, cervical contusions, right foot contusions, contusions, broken left ring finger and subsequent development of chromatic arthritis.

Petitioner also developed stomach ulcers in 1965 which he attributes to worry over his physical and financial condition resulting from the injuries received in the industrial accident. Petitioner alleges that the stomach ulcers are industrially related.

We are called upon to determine:

1. Is petitioner's ulcer condition an industrially related disability?

2. Has the petitioner suffered a loss in earning capacity as a result of the industrial accident?

### IS THE ULCER INDUSTRIALLY RELATED?

The Commission made a specific finding of fact with regard to petitioner's ulcer condition in its award of 17 August 1965 from which petitioner brings this writ of certiorari. The finding was:

"10. That the applicant's ulcer is not causally related to the accident of December 17, 1963."

We have reviewed the evidence before the Commission on this issue, and we do not find that the petitioner has sustained his burden of proving that the ulcer condition resulted from the industrial accident. Petitioner presented no medical evidence in support of his theory, and the law in Arizona is clear that:

"If the result of an industrial accident is not one which is clearly apparent to a layman, such as a loss of limb or external lesion, physical condition of the injured employee after the accident and the causal relation of the accident to such conditions usually can only be determined by expert medical testimony." Lowry v. Industrial Commission, 92 Ariz. 222, 224, 375 P.2d 572 (1962).

In the matter before this Court we have only the testimony of the petitioner that the worry and aggravation concerning loss of employment and his physical condition as a result of the industrial injury was one of the producing causes of his ulcer condition. The medical testimony does not support petitioner's contention, and we hold that the evidence reasonably supports the Commission's finding in this regard.

## HAS PETITIONER SUFFERED A LOSS OF EARNING CAPACITY?

■ The petitioner was originally evaluated by a medical board of which his attending physician was not a member. The board recommended that petitioner be referred to a hearing specialist to determine if he suffered a loss of hearing, and if he did not, that petitioner should be discharged with a scheduled 10% loss of the use of the left arm. Subsequent to this report and prior to the award of the Commission, the hearing specialist reported back that the petitioner did in fact suffer a hearing loss in the high frequency range. At a hearing held 28 April 1966 the petitioner's attending physician testified. He stated that the petitioner suffered multiple, residual disability—a loss of hearing, loss of equilibrium, loss of use in the left wrist and arm which in his opinion was greater than 10%, loss of movement in the left ring finger, neck pain, and loss of sensation which indicated nerve damage in the left wrist area.

The award of August, 1966, contains findings that the petitioner has suffered a permanent partial loss of function of the left arm and permanent damage to both ears resulting in a partial hearing loss and a loss of equilibrium, and that the combined disabilities constitute an "unscheduled. general physical functional disability". The Commission also finds that applicant has sustained no reduction in earning capacity as a result of his injury of 17 December 1963. The finding specifically states:

"(e) Applicant has returned to work as a carpenter. He is doing the same or similar work as that performed prior to the injury, and his earnings are equal to or in excess of his average monthly wage."

We do not feel that the evidence reasonably supports the findings made by the Commission in subsection (e). The evidence is uncontradicted that petitioner in his work prior to the injury had skills which required agility, balance, coordination and heavy physical labor. The finding that petitioner suffers a loss of equilibrium precludes his doing this type of work in his present physical condition. While the evidence established that petitioner does do carpenter work, it is clear that he is limited to lighter work on the ground level due to his physical disability. True, he was employed as a foreman at the time of the hearing, just as he had been at the time of the accident. However, there was evidence he had difficulty in hearing the telephone, which is a handicap to him on the job because as a foreman it was his duty to answer the telephone. There was also evidence that he had difficulty in handling some of the material due to the disability in his arm and that he could not manage the simple acts of driving nails as easily as before because he had difficulty in holding them with his disabled left arm.

In addition there was evidence that it is now necessary that petitioner have a helper for some of the jobs which he performed by himself prior to his injuries. Specifically mentioned among these was the fact that it was necessary for someone to help him hang doors.

There is also uncontradicted evidence in the record that petitioner's physical functional disability and the compensating his body must do to make up for this leads to a general over-all fatigue that makes it impossible for the petitioner to work overtime in his present condition, as he was accustomed to doing before the accident. The record is clear that overtime would be available to the petitioner if he were physically able to perform it. The statements of his employers are interesting in this respect. Testimony of Mr. Bever, one of the defendant's employers:

"Q  Now did you have an opportunity to employ Mr. Maness at any time following his industrial injury?

"A  Yes, at Villa Monterey in Scottsdale.

"Q  And your firm was doing work on that project?

"A  Yes.

\*    \*    \*    \*    \*    \*

"Q  Did you have an opportunity to observe his performance during this period sufficiently to enable you to compare it with what he was able to do before his injury?

"A  Yes, I did. I laid him off personally.

"Q  What do you mean you 'laid him off'?

"A  I usually don't lay anyone off; I usually leave that to my foreman. But since Mr. Maness and I had known each other for about a year, I laid him off personally and told him why. He just wasn't up to our standard, that is all."

Mr. Blythe, another employer:

"Q  Now, sir, based on these observations that you have related, do you have any opinion to any degree of reasonable certainty of the construction field as to whether or not this man is as employable in his field now as he was prior to his industrial injury?

"A  As far as my personal opinion is concerned—

"Q  Do you have such an opinion?

"A  I do have an opinion as a contractor.

"Q  Will you state it, please?

"A  With his capabilities, as I know them right now, he could not perform the tasks that I would expect of a normal carpenter, so that a job with me would be limited."

It is apparent that petitioner has suffered a loss of earning capacity by and as a result of the industrial accident. Our Supreme Court has stated:

"Examination of the instant case in the light of the above principles makes clear that the Commission erred in basing its award entirely upon the post-injury earnings. It is admitted by all that claimant suffered a five per cent general physical functional disability, but the Commission denied compensation on the grounds that claimant's earning capacity was not impaired. Examination of the record establishes that the only indications of such unimpairment must have been based on the job claimant was employed in at the time of the rehearing. \* \* \*

"The Commission may not arbitrarily ignore the existence of a physical functional disability solely on the basis of post-injury employment. Temporary employment—though of a five-month duration—may not be examined in a vacuum, but must be considered along with all the factors laid out by statute for determination of impairment of future earning capacity, A.R.S. § 23–1044, subsec. D, supra. A person having a disability impairing his earning capacity is entitled to compensation under our laws." Shroyer v. Industrial Commission, 98 Ariz. 388, 394, 395, 405 P.2d 875 (1965).

And this Court has stated that the Industrial Commission may not disregard an increase in claimant's basic wage between injury and his return to work in determining his loss of earning capacity as a result of a general physical functional disability, and that the question of overtime must also be considered by the Commission in determining a claimant's total loss of earning capacity. Carr v. Industrial Commission, 2 Ariz.App. 307, 408 P.2d 411 (1965). The Shroyer case, supra, emphasized that the physical disability is a criterion to be employed in determining loss of earning capacity though it is not the sole test, and such physical disability must be evaluated in relation to the work that can be performed and to the employee's ability to secure work. The object is to determine as nearly as possible whether in a competitive labor market subject, in his injured condition, can sell his services and for how much. Womack v. Industrial Commission, 3 Ariz.App. 74, 412 P.2d 71 (1966). The Commission's determination that petitioner suffered no loss of earning capacity is not reasonably supported by the evidence.

The award is set aside.

DONOFRIO and STEVENS, JJ., concur.