482 P.2d 493

Victor R. HOFFMAN, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Tempe Equipment Contracting Company, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 443.

Court of Appeals of Arizona, Division 1, Department A.

March 15, 1971.

Rehearing Denied April 19, 1971.
Review Denied May 19, 1971.

R. Kelly Hocker, Tempe, for petitioner.

Robert K. Park, Chief Counsel, State Compensation Fund by Arthur B. Parsons, Phoenix, for respondent carrier.

William C. Wahl, Jr., Counsel, Donald L. Cross, Former Chief Counsel, Phoenix, The Industrial Com. of Arizona, for respondent.

STEVENS, Presiding Judge.

On 15 February 1968 the petitioner, at the age of 48, was a full-time employee of the above-named respondent employer. He was a heavy duty mechanic. His hourly union wage scale for inside work, work in the employer's shop, as distinguished from outside work, work in the field or away from the shop, was $4.24 an hour. His primary work assignment was inside work. On the above date he sustained a work connected, compensable, acute myocardial infarction. By an award entered on 2 May 1968 his average monthly wage was determined to be $826.40.

It is not essential to report the history of the petitioner's case and his treatment nor the various medical aspects of the file. Allan I. Cohen, M.D., examined the petitioner both as a member of a Cardiovascular Board and individually. Thereafter, at the petitioner's request, and on 20 January 1969, the Commission approved the transfer of the petitioner's care and treatment to Dr. Cohen. We quote Dr. Cohen's report of 21 February 1969:

"I have your note of February 17, 1969 requesting a medical opinion regarding the cardiovascular status of this claimant. Please refer to my narrative report of December 2, 1968. In June, 1968 the patient developed 'palpitations' due to extrasystoles. It is not possible to state with medical certainty whether or not this rhythm disturbance would have occurred had he not sustained an acute myocardial infarction. It is known that such a disturbance may occur in the natural history of coronary artery disease, with or without accompanying infarction.

In July, 1968 the patient returned to work, his only symptoms being those re-

246

lated to subjective awareness of the rhythm disturbance. More recently, the patient has been completely asymptomatic, his extrasystoles being well controlled by the use of quinidine.

His present condition is stationary. Regular medical attention is indicated as a prophylatic measure. There are no residual functional limitations. However, it is possible that the rhythm disturbance (now well controlled) is an aftermath of the myocardial infarction of February 15, 1968. Accordingly, this patient is Class I with 10–15% impairment of the whole individual, on the basis of the rhythm disturbance."

The Commission entered its award on 19 March 1969. We quote portions of the findings contained in the award as follows:
" * * *

6. That the physical condition of said applicant is now stationary.

7. That this Commission finds that said applicant has suffered a 15% general physical functional disability as a result of said injury by accident.

8. That said applicant returned to work for the defendant employer doing the same type of work performed at the time of injury and is making as much or more than at the time of injury and therefore has suffered no loss of earning capacity and is not entitled to an award under the provisions of A.R.S., Section 23–1044, C & D, 1956.

9. That in determining that applicant has no reduced monthly earning capacity as a result of his injury by accident, this Commission has given full consideration to each of the matters set forth in A.R.S., Section 23–1044 D, 1956, and full consideration to all other facts and circumstances pertaining to the case."

After a formal hearing the above-quoted findings were approved and incorporated into an award dated 14 March 1970. The last-named award declared the petitioner to be "entitled to supportive medical benefits verified by appropriate vouchers, not

to exceed $50 per month" and expressly retained jurisdiction in relation to any changes which the petitioner may experience. It is the last award which is before us for review.

Following the entry of the 19 March 1969 award and after timely procedural steps the first and only formal hearing was held on 24 November 1969. The petitioner did not request that Dr. Cohen be called as a witness nor was he called by the Fund. The petitioner testified as did lay witnesses who were connected with his employment both before and after the infarct.

 At the time of the hearing he was drawing the union scale which had been increased to the sum of $4.47 per hour. This increase may not be utilized to show an increase in earnings. Carr v. Industrial Commission Of Arizona, 2 Ariz.App. 307, 408 P.2d 411 (1965), wherein this Court quoted from Allen v. Industrial Commission Of Arizona, 87 Ariz. 56, 347 P.2d 710 (1959). In the case now under consideration there was evidence that the petitioner worked more overtime hours after his infarction than he had before he sustained the infarction and also evidence that he did not have the physical strength to work a greater period of overtime. There were three factors to consider in relation to overtime. The first was that he did not seek overtime before his infarction. He testified:

"Q. Prior to your injury, did you do any outside work at your home in your garage as a mechanic?

A. Yes, I had a pretty good business heretofore built up in the evenings.

Q. Are you doing that anymore?

A. No. I don't do that, I don't do my own work anymore."

Loss of income from outside endeavors may not be considered in determining earning capacity or loss of earning capacity. The question of outside employment was extensively considered by this Court in Mickelson v. Industrial Commission Of Arizona, 7 Ariz.App. 182, 437 P.2d 666 (1968) [review denied].

The second factor in connection with overtime was a change in the economic conditions making more overtime available. The third factor was that "inside men" did not have the same opportunity for, and were not called upon to perform as much overtime as were "outside men." The petitioner's inability to perform overtime differs materially from the situation which we find in Carr. When Joseph B. Carr " * * * returned to work he lost the amount of overtime that he had normally put in on the job which the testimony clearly indicates was an expected or normal part of his employment."

The petitioner urges that the Commission should not have utilized Dr. Cohen's report, which we have hereinbefore quoted, urging this position for the reason that Dr. Cohen was not called as a witness. The rule of law which governs this case is that the injured workman is deemed to have knowledge of all matters in the file and that the entire file is in evidence absent objections and absent affirmative requests for the right to examine the author of the reports which are in the file. Davis v. Industrial Commission Of Arizona, 103 Ariz. 114, 437 P.2d 647 (1968) and Rule 29, Rules of The Industrial Commission of Arizona, effective 12 February 1963, which Rule is quoted in the footnote of Davis, 103 Ariz. at 118, 437 P.2d at 651. There is an absence of a request that Dr. Cohen testify at the formal hearing.

The petitioner urges that our recent decision in Hurler v. Industrial Commission of Arizona, 13 Ariz.App. 66, 474 P.2d 73 (1970) [review denied], governs the case under consideration. In our opinion there is marked factual difference. In Hurler the attending physician placed restrictions upon the work activities of the infarction recipient. The doctors restricted his places of employment and restricted the physical exertion of his employment. The petitioner herein was urged by Dr. Cohen to perform his full normal employment and some overtime employment for the purpose of strengthening his heart.

It is urged that the petitioner does not have the same physical capacity which he enjoyed prior to his infarction. He needs mechanical aids which he did not need before, he does not have the strength that he had before and from time to time he needs the help of a fellow workman to do the job which he could formerly perform alone. His situation is somewhat similar to that of Mr. J. L. Maness, whose claim was considered by this Court in Maness v. Industrial Commission Of Arizona, 5 Ariz. App. 259, 425 P.2d 447 (1967), and by the Supreme Court in a case with the same caption which was reported at 102 Ariz. 557, 434 P.2d 643 (1967), and vacated the Court of Appeals decision. We believe that it is appropriate to quote from the two opinions in relation to the claim of Mr. J. L. Maness.

In our opinion we made the following observations:

" * * * The evidence is uncontradicted that petitioner in his work prior to the injury had skills which required agility, balance, coordination and heavy physical labor. * * * While the evidence established that petitioner does do carpenter work, it is clear that he is limited to lighter work on the ground level due to his physical disability. * * * There was also evidence that he had difficulty in handling some of the material due to the disability in his arm and that he could not manage the simple acts of driving nails as easily as before because he had difficulty holding them with his disabled left arm. * * * In addition there was evidence that it is now necessary that petitioner have a helper for some of the jobs which he performed by himself prior to his injuries." 5 Ariz. App. at 261, 262, 425 P.2d at 449, 450.

We concluded our opinion as follows:

"The Shroyer case, supra, [98 Ariz. 388, 405 P.2d 875], emphasized that the physical disability is a criterion to be employed in determining loss of earning capacity though it is not the sole test, and such physical disability must be

evaluated in relation to the work that can be performed and to the employee's ability to secure work. The object is to determine as nearly as possible whether in a competitive labor market subject, in his injured condition, can sell his services and for how much. (citation omitted). The Commission's determination that petitioner suffered no loss of earning capacity is not reasonably supported by the evidence." 5 Ariz.App. at 263, 425 P.2d at 451.

In relation to the Maness problem we now turn to the opinion of our Supreme Court which we quote as follows:

"Evidence indicates his wage was not motivated by sympathy. Post injury earnings may raise a presumption of at least commensurate earning capacity. Allen v. Industrial Commission, 87 Ariz. 56, 65, 347 P.2d 710, 716 (1959).

"The Commission found that Maness has some permanent disabilities and that he has some difficulties in performing his work and may suffer some pain in his labors. Nevertheless, the Commission found that these permanent disabilities were not of the nature nor severe enough to have reduced his earning capacity at the time of the hearing. The purpose of the Workmen's Compensation legislation was *not* to compensate for difficulty and pain, but to compensate for *lost earning capacity*. (citation omitted). When an injured person returns to essentially the same nature of work he was doing before the injury, has steady employment, earns more money for his labors, and has at least one employer who is not aware of his disabilities, he cannot reasonably claim his earning capacity is diminished. (citation omitted).

Sometime in the future, if conditions which affect his earning power should change and result in a decrease in earning capacity due to the effect of the injury, then of course he could seek a reopening of his case for a new award. Adkins v. Industrial Commission, 95

Ariz. 239, 389 P.2d 118 (1964)." (Emphasis Theirs). 102 Ariz. at 558, 559, 434 P.2d at 644, 645.

In our opinion the problems which faced Mr. J. L. Maness are strikingly similar to the problems which face the petitioner in the case which we have now under consideration, and it is our opinion that the principles stated by the Arizona Supreme Court in its opinion in Maness are controlling in the instant matter.

The award is affirmed.

CASE and DONOFRIO, JJ., concur.