WILCOX *v.* WILCOX BROTHERS.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—WORKING MEMBERS OF PARTNERSHIP—EVIDENCE—SUFFICIENCY.

   In proceedings under the workmen's compensation act (Comp. Laws Supp. 1922, § 5429), the finding of the department of labor and industry that deceased was a working member of a partnership receiving wages irrespective of profits, *held*, supported by the evidence.[1]

2. SAME—ATTEMPT BY INSURER TO HAVE INSURED WAIVE PROVISIONS OF LAW INEFFECTUAL.

   Where an insurer issued a policy covering all of the employees of a partnership entitled to compensation under the law, an indorsement slip, excepting the working members of the partnership from the coverage of the policy, sent to the partnership by the insurer with instructions to attach to the policy, which, with the accompanying letter, was received and unanswered, but the slip was never attached to the policy, *held*, an ineffectual attempt by the insurer to have the partnership waive and abridge a portion of the law which the insurer had accepted.[2]

Certiorari to Department of Labor and Industry. Submitted April 9, 1925.   (Docket No. 46.)   Decided October 1, 1925.

Gertrude R. Wilcox presented her claim for compensation against Wilcox Brothers, a copartnership, for the accidental death of her husband in defendant's employ.   From an order awarding compensation, defendant and the Southern Surety Company, insurer, bring certiorari.   Affirmed.

*Coulter, Bogle & Hampton,* for appellants.

*Rardon & Rardon,* for appellee.

---

[1] Workmen's Compensation Acts, C. J. §§ 38, 120; [2] Id., C. J. § 174 (Anno).

As to whether members of partnership are employees within meaning of workmen's compensation acts, see note in L. R. A. 1918F, 204.

Steere, J.    Plaintiff's husband, Volney F. Wilcox, met his death on November 29, 1923, through being caught in a gravel slide while in performance of his duties as a superintendent on a road construction contract in Lapeer county upon which defendant Wilcox Brothers, a partnership, was engaged.    Wilcox Brothers carried accident insurance with the defendant Southern Surety Company under the employers' liability law.    Plaintiff filed a claim for compensation for her husband's death with the commission of the department of labor and industry, and on hearing before a deputy commissioner she was awarded the maximum death compensation under the act of $14 per week for 300 weeks and $200 for funeral expenses, which was affirmed on appeal to the full commission. The defendant insurance company seeks review and reversal of said award by certiorari.

Appellant's most serious contention is that deceased was not an employee in contemplation of the act because he was not receiving wages irrespective of profits, and therefore not protected by its policy.    The facts are little in dispute.    It was shown that in August, 1923, the copartnership of Wilcox Brothers consisted of the three brothers, Frank P. Wilcox, Asa N. Wilcox and Volney F. Wilcox.    Frank and Volney Wilcox were the active members of the partnership in their road building and had been associated together in that business for practically three years. Asa went into partnership with them in August, 1923. He took no active part in the construction work. Frank said his special benefit to the partnership was "the use of his name in getting this particular job." Asa testified he was a "silent partner," his brothers had lived at his house during that time and the three of them went over the business together while the work was in progress.    He mentioned his greatest responsibility as arising "when I had to get money— had to get out and hustle for it."

About October 12, 1923, the Southern Surety Company issued a policy insuring the Wilcox Brothers against liability in connection with their road work imposed upon them by the workmen's compensation law, using their standard form of policy which was on file with and had been approved by the department of labor and industry.

Paragraph 2 of section 7 of part 1 of the workmen's compensation law, as amended (Act No. 173, Pub. Acts 1921 [Comp. Laws Supp. 1922, § 5429]), provides:

"Every person in the service of another, under any contract of hire, express or implied, including aliens (including working members of partnerships, receiving wages irrespective of profits from such), and also including minors who are legally permitted to work under the laws of the State, who, for the purpose of this act, shall be considered the same and have the same power to contract as adult employees."

Appellant's attorney stated, "I know the man was killed by reasonable certainty while engaged upon his duties as foreman for Wilcox Brothers." Frank Wilcox testified that deceased acted as a foreman and superintendent of construction of the grade, and in his own absence superintended the whole thing. He was allowed $50 per week as compensation for his services. That the agreement between them was witness and deceased could each draw for their services $50 a week while the contract was being performed. If either drew more than that amount it would be charged against him as an overdraft for wages and if he drew less he would receive credit for it when the profits would be divided, but they had made no profits up to the time of his brother's death although he thought they did later. Asa Wilcox, who was not a working partner for wages, testified that deceased gave all of his time to the work, the agreement was that the two brothers were to have $50

per week "for salary" to do as they pleased with, that they drew as their necessities required but he did not think each man drew that much on an average as there had been no profits; that he himself procured the insurance policy from the surety company and gave them an estimate of the pay-roll for the period, including in it the wages of his brothers. Frank Wilcox testified that he made up the pay-roll figures for appellant as a basis of the policy and paid "for that premium." There was ample evidential support for the commission's finding that deceased was a working member of the partnership receiving wages irrespective of profits.

It is further contended for appellant that deceased

"by his own act took himself without the terms of the compensation act * * * by causing the insurance policy by which his copartnership was insured by the Southern Surety Company to be so drawn as to eliminate himself from its coverage."

This claim is based on the testimony of a clerk of appellant's casualty department in its branch office at Detroit and a letter written by her. She testified it was her duty to carry on correspondence with insured regarding policies in her department, that she at one time had some discussion with Volney Wilcox relative to the matter and later wrote them a letter. No reply was received to it by appellant. It is admittedly the letter Frank Wilcox testified he found opened amongst some papers after Volney's death. It is as follows:

"November 1st, 1923.
"WILCOX BROTHERS,
    "Imlay City, Michigan.
              "Attention of Volney Wilcox.
    *"Sir:*   Re Compensation Insurance Policy No. VU-017853.   We are inclosing herewith indorsement to be attached to your compensation policy above referred to.   You undoubtedly will recall that we took

this matter up with you while in the office recently when you advised us that it was your desire to cover the employees only.

"Very truly yours,
"Vice-President."

The inclosure with the letter is as follows:

"Indorsement effective October 12, 1923.   Not valid unless indorsed by duly authorized agent.   It is hereby understood and agreed that the copartners named in below mentioned policy, are excluded from the coverage thereunder, subject otherwise to all conditions, agreements and limitations of the policy as written except as herein specifically provided."

Attached to it and forming part of policy No. UC-017853.   Issued by the Southern Surety Company to Wilcox Bros. of Imlay City, Michigan.   Indorsed, Detroit, Michigan, this 1st day of November, 1923.   Southern Surety Company, Detroit branch. Authorized agent, C. C. Cobb, President.   We find no evidence that this indorsement ever was in fact attached to the Wilcox Brothers' policy or of anything said or done in regard to it by any member of the firm before deceased's death beyond the fact that the letter inclosing it had been received and apparently opened by him.   From his receipt of this so-called indorsement, or rider to be attached to the policy after it had been issued, and letter stating that while in appellant's office he had advised them "it was your desire to cover the employees only," and the fact no reply was received, it is claimed that deceased "had elected to not come under the provisions of the said workmen's compensation act."

Appellant's universal workmen's compensation policy contains the following:

"It is agreed that all of the provisions of each workman's compensation law covered hereby shall be and remain a part of this contract as fully and completely as if written herein, so far as they apply to compen-

sation or other benefits for any personal injury or death covered by this policy, while this policy shall remain in force."

It obligates the insurer to:

"Pay promptly to any person entitled thereto, under the workmen's compensaton law and in the manner therein provided, the entire amount of any sum due, and all instalments thereof as they become due. * * * To indemnify this employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America or the Dominion of Canada."

Section 3, Part 4 of the compensation law (2 Comp. Laws 1915, § 5475) provides as follows:

"Every contract for the insurance of the compensation herein provided for, or against liability therefor, shall be deemed to be made subject to the provisions of this act, and provisions thereof inconsistent with this act shall be void." * * *

Attached to and forming part of the policy, as stated over the signature of appellant's president, is a so-termed "Indorsement—universal compensation policy —Michigan," citing the Michigan workmen's compensation act with its various amendments and first saying:

"Insofar as the Michigan workmen's compensation law as above cited and defined applies to any injury or death covered by the policy to which this indorsement is attached, such policy is amended in accordance with the terms of this indorsement."

Several pages of the terms of that indorsement follow, providing amongst other things:

"(f) That it will file with the industrial accident board, at Lansing, Michigan, at least ten days before the taking effect of any termination or cancellation of

this contract or policy, a notice giving the date at which it is proposed to terminate or cancel this contract or policy; and that any termination of this policy shall not be effective as far as the employees of the insured covered thereby are concerned until ten days after such notice of such proposed termination or cancellation is received by the said industrial accident board;

"(*g*) That all the provisions of this contract, if any, which are not in harmony with this paragraph are to be construed as modified hereby, and all conditions and limitations in said policy, if any, conflicting herewith are hereby made null and void."

The retroactive indorsement upon which appellant relies excluding all copartners from coverage, while not a total termination or cancellation of the policy, canceled and terminated all rights of working partners for unconditional wages, materially altering the contract. The following conclusion of the commission is not without merit:

"The indorsement providing that members of the copartnership, who were receiving wages irrespective of profits, shall not be covered by the said policy is purely an attempt on the part of the respondent insurer to have the employer attempt to waive and abridge a portion of the law, which it had accepted, and under the indorsement last above quoted becomes clearly null and void, said policy agreeing, as above stated, to cover all employees."

On this record taken in its entirety we conclude there is evidence to support the commission's finding of facts and, with it as a basis, we find no error of law in its award, which will stand affirmed.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.