567 P.2d 337

**INSURANCE COMPANY OF NORTH AMERICA, insurer of Rollie's Mobiles, Inc., Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Rollie O. Gerdes, Respondent Employee.**

No. 1 CA–IC 1535.

Court of Appeals of Arizona,
Division 1,
Department C.

June 23, 1977.

Rehearing Denied July 22, 1977.

Arnold, Schneider, Moore & Demaree by Joseph L. Moore and Jones, Teilborg, Sanders, Haga & Parks, P. C., Phoenix, for petitioner.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Rollie O. Gerdes, Respondent Employee, in pro. per.

## OPINION

HAIRE, Judge.

This petition for review was brought by the Insurance Company of North America, insurer of Rollie's Mobiles, Inc., to protest the determination by the Industrial Commission that respondent employee Rollie Gerdes' average monthly wage at the time of his industrial injury[1] was in excess of the statutory maximum of $1,000 per month. At the time of his injury, employee Gerdes was functioning in multiple capacities: he was general manager and salesman for the corporation, of which he and his wife were the only corporate officers, comprised the entire board of directors, and owned all the stock. Because he made all the decisions as officer and board of directors, Gerdes testified he felt free to pay himself informally. There was no set salary or commission schedule established by corporate policy which applied to him.[2] Instead, Gerdes explained, he would pay himself by taking in his own name the properties received by the corporation as trade-ins on the mobile homes he sold. Gerdes testified quite candidly that he took properties in his own name in lieu of salary, that there was no corporate resolution which expressly authorized this procedure, but that, he and his wife being the officers, board of directors, and only stockholders, no meeting or formal resolution would be necessary as he made all the decisions and there was no other interest involved. Gerdes elaborated that it was beneficial to the corporation for him to take the traded-in properties in his own name because he would personally assume the mortgages still outstanding on such properties, whereas the lending banks would not have allowed the corporation to do so. This willingness to assume personal liability, he felt, resulted in sales for the corporation which would not otherwise have been made.

Based on this testimony, plus evidence of the values assigned to these properties by Gerdes at the times that he took them in trade, the hearing officer found:

"1. The evidence establishes that applicant was employed from May, 1974 until and after his industrial injury of December 14, 1974 as president and general manager by defendant employer. On the date of injury defendant employer was a family-owned corporation, applicant being president and his wife secretary. There is no evidence of a corporate resolution specifically establishing his salary for services rendered to the corporation.

"2. The unrefuted evidence establishes that between May and December of 1975 the applicant received certain properties taken in trade by the corporation, in lieu of cash salary payments. The total value of these properties exceeded an average of $1,000.00 per month.

\* \* \* \* \* \*

"5. The instant case is distinguishable from *Harvey Auto Supply, Inc., supra,* in that no corporate resolution setting a specific salary appears to have been made. This factor is not considered significant under the circumstances.

\* \* \* \* \* \*

"7. Applicant's average monthly wage at the time of his industrial injury of

---

1. Respondent Gerdes was injured while removing a tree stump on a lot on which he was placing a mobile home.

2. There was a 1971 salary and commission schedule, expressly applicable to the previous general manager who later sold his stock to Gerdes.

December 14, 1974 was in excess of $1,000.00, the maximum allowable by law. A.R.S. § 23–1041 E."

 As the evidence was presented, there is no real dispute that Mr. Gerdes actually did receive title to these traded properties in his own name. Insofar as the receipt of these properties represented real economic gain to the claimant, their value must be considered in the computation of his average monthly wage. *Harvey Auto Supply, Inc. v. Industrial Commission*, 25 Ariz.App. 274, 542 P.2d 1154 (1976); *Moorehead v. Industrial Commission*, 17 Ariz.App. 96, 495 P.2d 866 (1972); Larson, Workmen's Compensation Law, § 60.12 (1976). There is no question that wages may be received in other forms of property as well as in cash. *See Matlock v. Industrial Commission*, 70 Ariz. 25, 215 P.2d 612 (1950); *Harvey Auto Supply, Inc. v. Industrial Commission, supra.* However, as the *Moorehead* opinion illustrates, not every payment made to an employee constitutes wages for purposes of computing the injured employee's average monthly wage. The concept of wages, as explained in *Moorehead*, involves the question of whether the sums are received by the workman as "compensation for his services performed." *Moorehead v. Industrial Commission, supra*, 17 Ariz.App. at 99, 495 P.2d at 869.

This is not the proper forum in which to discuss the legality of the manner in which Mr. Gerdes took title to these properties. We do think it clear, however, that under no view of the evidence presented can Mr. Gerdes be said to have established that he received property of specific value as compensation for his services rendered to this corporation.

We will first consider the evidence as to the value of the properties received.

 By functioning as salesman, manager, corporate officer, board of directors and sole stockholder "all rolled into one",

Mr. Gerdes was able to make sales and assign a value to the property the buyer traded without any other entity to approve or disapprove the value so assigned. We find it significant that no evidence was presented as to the amount of actual equity the mobile home buyer had achieved on the traded property, no evidence of an independent appraisal was offered, and no evidence was offered as to the price Gerdes obtained at resale.[3] Without some independent evidence to establish value for these properties, the amount Gerdes himself might decide to assign as a trade-in amount could vary at his whim, according to the amount of profit or loss he was willing to accept when he made a sale of a particular mobile home, and thus may or may not indicate true economic market value.[4] Gerdes testified that Rollie's Mobiles was operating at a loss during 1974, the year in question, and he supported himself by the income he received from selling the properties taken in trade. The temptation to make sales at the expense of the corporation by assigning a high value to a trade-in and personally pocketing the amount received from re-selling the property traded is obvious; we feel that such self-assigned trade-in value does not meet the burden of establishing the market value of the properties received.

In addition to the lack of proof as to the market value of these properties, we note that the hearing officer made no allowance against the trade-in value assigned for the costs of transfer and the obligations personally assumed. Gerdes testified that he took these properties subject to mortgages due, interest fees, closing costs, escrow fees and other incidental costs of transfer. No allowance was made by him or the hearing officer to deduct the value of any of these costs from the gross amount.

 If we consider, under *Harvey Auto Supply, Inc. v. Industrial Commission,*

---

**3.** While Gerdes' profit is irrelevant in establishing his actual wages from Rollie's Mobiles, the sale price would at least be evidentiary as to the market value of the properties he received in lieu of wages.

**4.** We note that in Gerdes' initial report of injury, he, perhaps with more candor than in later proceedings, reported his wages as "Profit—if any."

*supra*, that any real increment to the wealth of the recipient can constitute wages, the net value of these properties to him, rather than the gross amount allowed to the mobile home buyer as a trade-in, would be the proper measure of such increment.

Evidence was received at the hearings concerning earnings and commission and salary schedule for a Mr. Larry McNeil, who had served the corporation as manager-salesman from 1968 through March of 1974. On April 1, 1974, he sold his ownership interest to claimant Gerdes, and Gerdes took over Mr. McNeil's functions. Mr. Gerdes explained in his brief that, had such a schedule been applicable to him, he "would have earned more."[5] But it is actual, not speculative, earnings with which the Commission is concerned in establishing an average monthly wage for purposes of A.R.S. § 23–1041.

Mr. McNeil also testified as to the amount of his own earnings in the four months immediately preceding the April 1, 1974 transfer to Mr. Gerdes. Since we do not feel that this random four month period has sufficient relevancy to be probative as to the amount of Gerdes' wages, we do not reach the question here of whether evidence of another person working in a similar capacity is ever properly considered where the applicant himself has been continuously employed during the 30 day period immediately preceding the industrially related injury.[6]

In addition to the problem of valuing the properties Gerdes received from the corporation, the informal manner in which these distributions were made to him causes confusion as to whether whatever value was received by Gerdes was received as wages, as profits, or as a distribution of assets.[7] It is indisputable that a person may be at once an officer, stockholder and an employee for workmen's compensation purposes. *Williams v. Williams Insulation Materials, Inc.*, 91 Ariz. 89, 370 P.2d 59 (1962); *Harvey Auto Supply, Inc. v. Industrial Commission*, 25 Ariz.App. 274, 542 P.2d 1154 (1976). On the other hand, profits from operations are not synonymous with wages, and must be distinguished from wages as the basis for an award of compensation. *Burgess v. Southern Casualty Insurance Co.*, 203 So.2d 434 (La.App.1967); *Carter v. Consolidated Underwriters*, 62 So.2d 682 (La.App.1953); *Wilcox v. Wilcox Bros.*, 232 Mich. 140, 205 N.W. 90 (1925). Gerdes testified that he was the major stockholder, and that he had been receiving properties as his share of profits since 1971. Insofar as these properties were received by him as profits accruing from his capital investment, independent of his own efforts, they are dividends and should not be considered wages for purposes of establishing his average monthly wage to determine an award of compensation. *Clingan v. Fairchance Lumber Co.*, 166 Pa.Super. 331, 71 A.2d 839 (1950). This does not mean, of course, that a concurrent status as officer or stockholder would preclude an injured workman from receiving workmen's compensation benefits as an employee. The problem presented here is simply that Gerdes failed to establish that any part of the property he received represented com-

---

5. Under this schedule, the amount of these commissions was to be reduced to 25% of net profit if the net profit on a particular sale fell below 25%. No evidence was introduced as to the actual profit made on any of Gerdes' sales.

6. As petitioner insurance company observes, the hearing officer miscalculated the amount of Mr. McNeil's earnings: the hearing officer found that the earnings were $1,100 per month; Mr. McNeil's testimony was that he had earned approximately $1,100 during the entire four month period.

7. The determination as to which corporate assets distributed to Gerdes constituted salary was not made in advance of a sale or even contemporaneously with a sale. As a part of Exhibit 1, the record contains a letter from Gerdes to the carrier, written six months after the injury in which Gerdes discusses corporate assets distributed to him having an alleged value in excess of $19,000, and notes that he could claim all as salary, but because of valuation problems, "I therefore have picked [two properties] as salary, as the properties have been re-sold and the value to me proven." No evidence was introduced to establish this resale value.

pensation for services, as distinguished from dividends on his invested capital or a return of this capital. Although it was concerned with a somewhat different problem, we find the court's discussion in *Leigh Aitchison v. Industrial Commission*, 188 Wis. 218, 205 N.W. 806, at 807, 808 (1925) to be helpful in elucidating the problem here:

"It may be conceded that the mere fact that one is a stockholder, officer, or director of a corporation does not preclude this being at the same time an employee. No hard and fast rule can be laid down based upon the amount of stock which an individual may own or any other arbitrary standard. A study of the cases to which reference has been made sustains that. It is quite apparent that in this case none of the ordinary incidents of the relationship of employer and employee exist. 20 C.J. 1241, and cases cited. Mrs. Aitchison fixed her own salary, which was substantially the total amount of the earnings of the corporation, fixed her own hours of employment, prescribed her own duties, was responsible to no one; no one had the power or authority to discharge her and she was subject to no one's direction. It would seem to require no argument to show that under those circumstances she was not an employee in the sense in which that term is used in the Workmen's Compensation Act (St. 1923, §§ 102.01–102.41). Wood, Master and Servant, par. 317. See, also *Farmer v. St. Croix Power Co.*, 117 Wis. 76, 93 N.W. 830, 98 Am.St.Rep. 914.

"We do not, in reaching this conclusion, ignore the fact that the corporation is a distinct entity; nor do we reach this conclusion merely because she was the owner of a very large proportion of the stock issued, but because upon the undisputed facts she did not sustain the relation of employee to any one. While it is true she devoted practically all of her time to the carrying on of the business of the corporation, in the doing of work which might be done by employees, that is not control-

ling. The relationship of a person to a corporation is not determined by the nature of the services performed, but by the incidents of the relationship as they actually exist.

\* \* \* \* \* \*

"Mrs. Aitchison was subject to no one; she could do as she pleased. The entire earnings were awarded to her as salary. If the corporation did not earn the amount of her salary and she paid it to herself, it would be out of her own capital. We shall not speculate nor philosophize as to what might or might not be the legal relationship in suppositious cases. It is quite clear in this case that the relationship of employer and employee did not exist."

In the instant case, we have the additional complication that, based on the evidence presented, the properties given to Gerdes were neither wages nor profits denominated as such but assets owned by the corporation, a distribution of which would be at best simply a return to him of his own invested capital and in no sense wages. In this regard, we note that no payroll or other accounting records were introduced to support the hearing officer's finding that they were in fact wages.

The special danger, in a situation where the injured employee is also functioning as corporate officer, board of directors and sole stockholder, is that where no specific set salary is established prior to the injury as a definite corporate obligation, once the injury has occurred the controlling stockholder-employee will demand compensation benefits based on the maximum possible wage. Where, as here, the corporation's specified obligation to pay salary was nonexistent or nominal,[8] what was actually paid varied according to the assets on hand and the value was assigned on the ad hoc determination of the recipient, the potential for an after-the-fact transfer in order to increase the salary amount to the statutory

---

8. The above-mentioned 1971 corporate resolution establishing a commission schedule set the "president's" salary at $2 per hour, plus com-

missions. The testimony was to the effect that even this minimal amount was never applied to Gerdes.

maximum is apparent. *Cf. Gardner v. Industrial Commission,* 19 Ariz.App. 93, 505 P.2d 261 (1973).

 We do agree with the hearing officer that the lack of a corporate resolution specifically establishing a salary for Gerdes for his services rendered to the corporation is not necessarily determinative. But we also find that, under the evidence presented here, the lack of any definite contractual liability on the part of the corporation for a specific salary, coupled with the unstructured manner in which the disbursements were made, provides an insufficient yardstick by which the wage rate of respondent Gerdes can be measured. *American General Insurance Co. v. Hightower,* 264 S.W.2d 481 (Tex.Civ.App.1954).

In response to the petitioner's opening brief filed in this Court, Gerdes filed a handwritten memorandum containing many factual allegations not a part of the record before the Commission. For that reason, we have not considered said factual allegations in disposing of this review.

 We hold that there was no substantial evidence to support the hearing officer's finding that respondent's actual monthly wage was in excess of that set by the carrier.

Award set aside.

FROEB, C. J., and JACOBSON, P. J., concur.