39 P.3d 534

**Edward E. WARREN, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Arizona State University, Respondent Employer,**

**State of Arizona, DOA Risk Management, Respondent Carrier.**

**No. 1 CA–IC 00–0113.**

Court of Appeals of Arizona, Division 1, Department C.

Jan. 31, 2002.

Jerome, Gibson, Stewart, Friedman, Stevenson & Engle, P.C. by James L. Stevenson, Phoenix, for Petitioner.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for Respondent.

Janet Napolitano, Attorney General by Maria Morlacci, Assistant Attorney General, Phoenix, for Respondents Employer and Carrier.

THOMPSON, Judge.

¶ 1 This is a review of an Industrial Commission of Arizona (ICA) award and decision upon review for no loss of earning capacity. The dispositive issue is whether post-injury raises related to the general labor market rather than to individual merit must be excluded when assessing an injured worker's residual earning capacity. Concluding that the administrative law judge erroneously included these salary increases to find no loss of earning capacity, we set aside the award and decision upon review.

## BACKGROUND

¶ 2 When injured in October 1996, petitioner employee (claimant) was employed by respondent employer (ASU) full-time as a "custodial area supervisor" and part-time as a special events barricader. Based on earnings from both employments, it was determined that claimant had an average monthly wage of $2,100.00, which was the statutory maximum wage allowance under Arizona Revised Statutes Annotated (A.R.S.) § 23–1041(D)(4) (1995 & Supp.2000) for the period at issue.[1]

¶ 3 While claimant was temporarily totally disabled, ASU increased the salary of all similarly employed workers in April 1997 and again in January 1998. The first increase simply changed the salary class for area supervisors and was clearly motivated by the fact that ASU had been paying at the low end of the salary range for comparable positions in the Maricopa County labor market.[2]

¶ 4 The second increase was more complicated. ASU added administrative duties to claimant's date of injury job, renamed the position, and increased the salary to $27,400.00 a year. But even with this cumulative increase of 25.5% over claimant's date of injury salary, ASU still was paying 10% less than the salary for comparable positions in the Maricopa County labor market.

¶ 5 Claimant's industrial injury subsequently became stationary with permanent impairments and functional limitations. These impairments disabled claimant from returning to work as a barricader, but he did return to work for ASU as a custodial services assistant supervisor earning $27,400.00 a year.

¶ 6 The ICA issued a no loss award based on claimant's current earnings as a custodial supervisor at ASU. Claimant timely protested this no loss award.

¶ 7 Hearings ensued. We focus on two material conflicts. First, conflicting evidence was presented concerning the nature of claimant's work. According to ASU, the duties of a custodial services assistant supervisor were essentially administrative and consistent with claimant's limitations with only minor modifications. However, ASU's witness acknowledged that the duties of an assistant supervisor and of an area supervisor were essentially the same and that she lacked first hand knowledge of the functional requirements of claimant's date of injury job. In contrast, claimant testified that his date of injury job required substantial walking, climbing, and lifting and that fundamental modifications were necessary for him to return to work.[3]

---

1. Claimant's combined total average monthly wage was actually about $2,225.00. He earned about $1,800.00 a month as a custodial supervisor.

2. No evidence was presented quantifying the first increase.

3. Indeed, claimant considered asserting that ASU was providing sheltered employment to him, but he abandoned this position during the

¶ 8 Second, conflicting evidence was presented concerning whether claimant's post-injury salary reasonably represented his earning capacity. According to ASU's labor market consultant, because claimant would not have received the pay increases if he had inadequately performed his job, both increases were based on merit and therefore represented claimant's current earning capacity. Also, ASU's consultant testified that the Consumer Price Index (CPI) appropriately applied to this case to adjust for inflation between claimant's date of injury and current salaries and that because the adjusted salary exceeded the statutory maximum average monthly wage, claimant did not have a loss of earning capacity.[4]

¶ 9 According to claimant's labor market consultant, claimant had a loss of earning capacity for three reasons. First, claimant was able to work two jobs before his injury but was unable to work at one of the jobs after it. Second, because State of Arizona employees have received little or no raises over the years, a rollback calculation based on the CPI was inappropriate. Third, because all employees in the same class as claimant received the same increases in salary, the increases were not merit increases and therefore should not be included to calculate claimant's post-injury earning capacity.

¶ 10 After receiving post-hearing memoranda, the administrative law judge issued an award for no loss of earning capacity. He found that claimant was unable to return to work as a barricader but "did return to work [with accommodations] as a custodial area supervisor, although the specific job title for that work had changed" and was earning approximately $27,000.00 annually. Noting that post-injury earnings raise a rebuttable presumption of commensurate earning capacity, the administrative law judge found that claimant had not rebutted the presumption by proving that his actual earnings did not represent his earning capacity as a result of

factors such as employer sympathy, sheltered or transitory employment, or that continuing to work would aggravate his industrially related condition. The administrative law judge also accepted ASU's consultant's opinion that the CPI appropriately applied to claimant's post-injury earnings and that his rolled-back salary exceeded the statutory maximum average monthly wage.

¶ 11 The administrative law judge affirmed this award on administrative review.[5] Claimant then timely filed this Rule 10 special action.

¶ 12 This court has jurisdiction under A.R.S. § 12–120.21(A)(2) (1992), A.R.S. § 23–951(A) (1995), and Rule 10, A.R.C.P. We deferentially review reasonably supported factual findings but independently review legal conclusions. *PFS v. Indus. Comm'n*, 191 Ariz. 274, 277, 955 P.2d 30, 33 (App.1997).

## DISCUSSION

### A. DISABILITY TO WORK AS BARRICADER

¶ 13 On review, claimant concedes that his post-injury salary rebuttably established his earning capacity. *See, e.g., Laker v. Indus. Comm'n*, 139 Ariz. 459, 462, 679 P.2d 105, 108 (App.1984) (citation omitted). However, claimant asserts that because concurrent earnings contributed to his average monthly wage and the industrial injury has disabled him from one of the contributing employments, he rebutted the presumption. To conclude otherwise, the argument continues, would violate the equal measure rule.

¶ 14 We disagree. To satisfy the equal measure rule, the average monthly wage and post-injury earning capacity must be measured by the same "yardstick." *Whyte v. Indus. Comm'n*, 71 Ariz. 338, 344, 227 P.2d 230, 233–34 (1951); *see also, e.g., Reavis v. Indus. Comm'n*, 196 Ariz. 280, 284, ¶ 20, 995 P.2d 716, 720 (App.1999). For ex-

---

hearings. *See generally Doles v. Indus. Comm'n,* 167 Ariz. 604, 609, 810 P.2d 602, 607 (App.1990) (concluding that sheltered employment does not represent earning capacity).

4. ASU's consultant confirmed that the income in the open labor market for comparable custodial supervisors was about $30,000.00 a year.

5. This decision made technical corrections but no substantive changes in the award.

ample, if an average monthly wage is based on part-time employment, post-injury earning capacity may not be based on full-time employment. *See Elias v. Indus. Comm'n,* 175 Ariz. 507, 509, 858 P.2d 652, 654 (App. 1992). Similarly, if an average monthly wage does not include overtime, then post-injury earning capacity may not include overtime. *See Arizona Pub. Serv. Co. v. Indus. Comm'n,* 16 Ariz.App. 274, 278, 492 P.2d 1212, 1216 (App.1972) (dictum).

¶ 15 The converse does not follow under the equal measure rule. Although an average monthly wage is based on full-time or overtime employment, post-injury earning capacity may be based on fewer hours of higher paying employment.

¶ 16 Claimant's total disability to work as a barricader does not differentiate this case. A worker may be totally disabled from his or her primary vocation, but if he or she retains the capacity to perform any suitable, reasonably available work that pays the equivalent of the statutory maximum average monthly wage, then the worker has no loss of earning capacity despite the total disability to perform the date of injury work. *See, e.g., White v. Indus. Comm'n,* 87 Ariz. 154, 156, 348 P.2d 922, 923–24 (1960); *Schmitz v. Indus. Comm'n,* 26 Ariz.App. 404, 405–06, 549 P.2d 184, 185–86 (1976). Moreover, claimant's right to rearrange in the event of a change in his earning capacity has not been prejudiced. *See generally* A.R.S. §§ 23–1044(F), 1061(H) (1995 & Supp.2000). If he loses his post-injury employment, then his disability to work as a barricader may be relevant to his post-injury earning capacity. *See Arizona Dep't of Pub. Safety v. Indus. Comm'n,* 176 Ariz. 318, 322–24, 861 P.2d 603, 607–09 (1993) (termination for misconduct); *Oquita v. Indus. Comm'n,* 120 Ariz. 610, 611–12, 587 P.2d 1187, 1188–89 (App.1978) (termination for general economic conditions).

## B. INCLUSION OF POST–INJURY SALARY INCREASES

¶ 17 Claimant next asserts that because all area supervisors received salary increases,

these increases did not reward individual merit and therefore should not have been included in determining claimant's post-injury earning capacity. ASU responds by arguing that this court rejected a similar argument in *Laker* and that claimant is unfairly attempting to retain the benefit of the increased salary and to avoid the burden of a post-injury earning capacity exceeding the statutory maximum average monthly wage.

¶ 18 We disagree that the current case is comparable to *Laker.* There, the claimant asserted that the carrier failed to prove that "merit raises" paid to all employees were not disguised cost of living increases. *Laker,* 139 Ariz. at 463, 679 P.2d at 109. Because the claimant, not the carrier, had the burden of proof and "merit raises based on continued satisfactory performance or longevity" realistically reflect earning capacity, the court rejected the claimant's assertion. *Id.* (citing *Charles v. Indus. Comm'n,* 25 Ariz.App. 280, 542 P.2d 1160 (1975)).[6]

¶ 19 In the current case, claimant has not attempted to shift the burden of proof to ASU and has introduced evidence concerning the salary increases. This evidence established that claimant did not receive fixed, periodic salary increases for continued employment. To the contrary, after an unspecified duration without increasing the salary of area supervisors, ASU increased the salary of all supervisors to reduce the significant disparity between its pay scale and the salary range for comparable positions in the Maricopa County labor market. Because all supervisors, even ones newly hired, would be entitled to the same salary classification, the raises were not merit increases for continued satisfactory performance.

¶ 20 Having distinguished *Laker,* we turn to ASU's policy argument that claimant unfairly seeks both to have his cake and eat it. To answer this argument, we must reexamine *Whyte.*

¶ 21 The supreme court decided *Whyte* in 1951, during the postwar business boom but when memories of the great depression re-

6. In *Charles,* a postal worker received fixed, periodic wage increases for continued employment. *See* 25 Ariz.App. at 281, 542 P.2d at 1161. A newly hired postal worker therefore would not

receive the same wage as the claimant until he or she progressed through the same fixed periods of wage increases.

mained fresh. *See Whyte v. Indus. Comm'n,* 71 Ariz. 338, 344, 346, 227 P.2d 230, 233, 235 (1951) (taking judicial notice of post-war business boom and citing depression era cases). The accepted interpretation of *Whyte* has been that post-injury earnings must be discounted for inflation since the date of injury. *See, e.g., McPeak v. Indus. Comm'n,* 154 Ariz. 232, 234–35, 741 P.2d 699, 701–02 (App. 1987); *Charles,* 25 Ariz.App. at 281, 542 P.2d at 1161; *see also Arizona Workers' Compensation Handbook* § 7.4.3, at 7–25 (Ray Jay Davis et al. eds., 1992). In our opinion, *Whyte* is broader than this accepted interpretation.

¶ 22 The supreme court does address post-injury inflation. Indeed, some of the language in *Whyte* seems to equate wage and salary increases related to business booms with inflation. *See, e.g.,* 71 Ariz. at 345, 227 P.2d at 234 (hypothetically describing general increase in wages "also due entirely to further inflationary trends"). However, the court also expressly addresses post-injury increases in the standard of living:

> The authorities seem to agree that the employee in common with all others must bear the loss resulting from a business depression. It follows as a necessary corollary thereto that *the employee in common with all others is entitled to the enjoyment of benefits resulting from general wage increases due to eras of great prosperity in the nation.*

*Id.* at 346, 227 P.2d at 235 (emphasis added). Because inflationary increases are nominal rather than real, *see generally McPeak v. Indus. Comm'n,* 154 Ariz. 232, 234, 741 P.2d 699, 701 (App.1987) (discussing difference between real and nominal wages), the court must have meant that an injured worker is entitled to real post-injury increases, not merely to an adjustment for nominal post-injury increases.

¶ 23 We also may take judicial notice of the unprecedented national and local prosperity in recent years, during which wage and salary levels generally increased yet inflation remained relatively low. However, the salaries of ASU's custodial supervisors stagnated until after claimant's injury, when ASU managed to increase them to within 10% of the medium salary for comparable supervisors in the open labor market.

¶ 24 In our opinion, these increases were unrelated to claimant's individual merit and instead resulted from an era of great national prosperity. Because *Whyte* allows an injured worker to enjoy such increases, they should have been excluded from claimant's post-injury earning capacity. *Cf. Hoffman v. Indus. Comm'n,* 14 Ariz.App. 244, 246, 482 P.2d 493, 495 (1971) (excluding post-injury increase in union wage from post-injury earning capacity); *Carr v. Indus. Comm'n,* 2 Ariz.App. 307, 310, 408 P.2d 411, 414 (1965) (excluding post-injury wage increase from post-injury earning capacity).

## CONCLUSION

¶ 25 For these reasons, we conclude that the administrative law judge erred by including claimant's post-injury salary increases and merely discounting the increased salary for inflation between the date of injury and the date claimant returned to work as a custodial supervisor for ASU. We accordingly set aside the award and decision upon review.

CONCURRING: WILLIAM F. GARBARINO, Presiding Judge, and SUSAN A. EHRLICH, Judge.